**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

**GORDON JONAS,**

                        Plaintiff,

                                                          **03 Civ. 3374 (JGK)**

   - against -

                                                         **MEMORANDUM**

**INTERNATIONAL AIRLINE EMPLOYEES F.C.U.,**    **OPINION AND ORDER**

                        Defendant.
------------------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Gordon Jonas, proceeding pro se, brought this suit alleging that the defendant, International Airline Employees F.C.U. ("IAEFCU"), violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and specifically 15 U.S.C. § 1681c(a)(4), by reporting a collection on a debt from the plaintiff in November 2000. (Amend. Compl. at 1.) The defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the plaintiff has cross moved for summary judgment.

    The plaintiff initially filed a complaint on May 13, 2003 against IAEFCU, Equifax Information Services LLC ("Equifax"), and Michael Kohl, alleging a violation of the FCRA. Thereafter, the plaintiff and defendant Equifax stipulated to the dismissal of Equifax. The plaintiff never served Kohl properly and dismissed him when the plaintiff filed his Amended Complaint, leaving only his claim against IAEFCU.

1

The plaintiff filed the Amended Complaint on March 22, 2004, alleging that IAEFCU, in reporting to Equifax a November 2000 payment on an account placed for collection in 1993, allegedly violated § 1681c(a)(4), which provides that consumer reporting agencies ("CRAs") may not make any consumer reports on "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4).

In responding to the motion for summary judgment, the plaintiff also alleged that in addition to § 1681c(a)(4), the defendant also violated 15 U.S.C. § 1681b; 15 U.S.C. §§ 1681s-2(a)(1), (a)(2), and (b)(1); and 15 U.S.C. § 168li(a)(2). The plaintiff also filed a cross motion for summary judgment.

The defendant's motion for summary judgment argues that § 1681c(a)(4) of the FCRA applies exclusively to credit reporting agencies, and not to entities that provide information to such CRAs. For the reasons stated below, the defendant's motion for summary judgment is **granted**, and the plaintiff's cross motion is **denied**.

**I.**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

2

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795,

805-06 (1999); Celotex, 477 U.S at 322; Powell v. Nat. Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude. See McPherson v. Coombe, 174 F.3d 276,

279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). In particular, the pro se party must also be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999); Gonzalez-Jimenez v. U.S., No. 99 Civ. 3772, 2000 WL 1448628, at *4 (S.D.N.Y. Sept. 28, 2000). In this case, the defendant provided the required notice to the plaintiff by complying with Local Rule 56.2.[1]

**II.**

The following facts are undisputed unless otherwise noted. In 1989 and 1993, the plaintiff borrowed money from IAEFCU, a federally chartered credit union and the plaintiff's former employer. (Def.'s Rule 56.1 Stmt. at 1; April 20, 2000 Trial Transcript at 2-9.) After the plaintiff defaulted on this loan, the defendant commenced suit against the plaintiff in Civil Court of the City of New York, which resulted in a restraint placed upon the plaintiff's bank account and a levy issued by a city marshal.

---

[1] In accordance with Local Rules for this District, the defendant properly submitted a Rule 56.1 Statement of Material Facts on Motion for Summary Judgment ("Def.'s Rule 56.1 Stmt.") and a Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment. Because the defendant's Rule 56.2 statement did not attach a copy of Rule 56, the Court provided a copy of Rule 56 with an Order dated September 10, 2005.

5

(Def.' Rule 56.1 Stmt. ¶¶ 3, 4.)  Pursuant to this levy, the defendant received funds in November 2000, which were credited to the plaintiff's account. (Id.)

The summary judgment record shows that the defendant received a payment totaling $5,050.66 on November 6, 2000 on behalf of the plaintiff from Professional Services of New York, Ltd., a collection agency. (Affidavit of Regina Kaler, sworn to March 4, 2004 ("Kaler Aff.") at 1.)  Upon receipt, IAEFCU deposited this payment and credited the plaintiff's loans. (Kaler Aff. at 1.) Of the $5,050.66 received, $1,012.42 was credited to loan 34, paying the balance in full, and $4,038.24 was credited to loan 35, leaving a balance of $1,805.82.  (Id.)

The plaintiff telephoned Equifax to dispute the IAEFCU payment, as well as a payment reported by another creditor. (Initial Compl. at 3.)  He spoke with Equifax customer service representatives on April 7, 2003 and May 12, 2003.  (Id.) Thereafter, Equifax contacted the defendant with a consumer dispute verification, inquiring as to the date, last payment, and current balance of Mr. Jonas' account.  (See Equifax Consumer Dispute Verification form, attached as exhibit to the Kaler Aff.) The defendant informed Equifax through this form that the date of the last payment was November 2000 and that the current balance amounted to $1,805.00.  (See id.)

6

**III.**

The plaintiff alleges that IAEFCU "presented certain information [to Equifax] regarding an IAEFCU account placed for collection sometime in 1993 and antedate[d] the plaintiff['s] credit report dated May 6, 2003 by more than (7) seven years" in violation of 15 U.S.C. § 1681c(a)(4). (Amend. Compl. at 1.) The plaintiff argues that, in reporting the November 2000 payment to Equifax, IAEFCU caused the delinquent account to remain on the plaintiff's credit report beyond the seven-year limit provided by § 1681c(a)(4).

The plaintiff urges the Court "to order punitive damage[s] against the defendant for providing the incorrect information to the credit agency [Equifax], and for pain and suffering for [plaintiff's inability] to utilize the full benefit of his credit ability as a result of the delinquency of the information provided by the defendant provider." (Amend. Compl. at 2.)

Section 1681c(a)(4) provides that "no consumer reporting agency may make any consumer report containing any of the following items of information: ... (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." Thus, to establish a claim under § 1681c(a)(4), a plaintiff must prove that: (1) a "consumer reporting agency" ("CRA") (2) made a "consumer report" that (3)

7

contained information on "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."

The plaintiff's claim under 15 U.S.C. § 1681c(a)(4) must be dismissed because two elements of his claim cannot be satisfied: (1) IAEFCU is not a CRA for § 1681c(a)(4) purposes; and (2) the information that IAEFCU provided to Equifax cannot be considered a "consumer report" for § 1681c(a)(4) purposes.

The FCRA defines a CRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

IAEFCU is a federally chartered credit union.  (Def.'s Rule 56.1 Stmt. at ¶ 1.)  There is no evidence that IAEFCU regularly engages in the practice of "assembling or evaluating consumer credit information" for the purpose of furnishing consumer reports to third parties.  IAEFCU reports credit information to CRAs, who then assemble and evaluate the information.  Thus, the plaintiff has adduced no evidence that the CRA requirements set forth in 15

U.S.C. § 1681c(a)(4) apply to the defendant. See DiGianni v. Stern's, 26 F.3d 346, 349 (2d Cir. 1994) (finding that the FCRA "does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it"); see also Melendez v. Equifax Credit Info. Serv. et al., No. 95-2309, 1997 WL 392375, at *2 (D.P.R. 1997) (dismissing complaint against company that furnished information to a CRA, and noting that entities that furnish information to a CRA are not considered CRAs and fall outside the scope of the FCRA); Alvarez Melendez v. Citibank, 705 F. Supp. 67, 69 (D.P.R. 1988) (dismissing suit against defendant bank because it did not "assemble or evaluate consumer credit information to distribute to third parties"); D'Angelo v. Wilmington Medical Ctr., Inc., 515 F. Supp. 1250, 1253 (D. Del. 1981) (finding that the duties imposed on CRAs in the FCRA implied a congressional intent to exclude from the statute's applicability those entities "remote" from the process of making decisions based on a person's credit).

Moreover, the information provided by IAEFCU to Equifax cannot be considered a "consumer report" within the meaning of the FCRA.[2]  The statute requires that the report be made by a CRA, and

---

[2] As defined in 15 U.S.C. § 1681a(d)(1), "[t]he term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's

9

thus the report by IAEFCU would not fall within the statutory definition. Furthermore, the statute explicitly notes that "[t]he term 'consumer report' does not include ... any (i) report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i).

The information provided by IAEFCU to Equifax pertained solely to the money loaned by IAEFCU to Mr. Jonas. This information clearly concerned a transaction "between the consumer and the person making the report," which is not a "consumer report" within the meaning of the FCRA. See Podell v. Citicorp Diners Club, 859 F. Supp. 701, 705 (S.D.N.Y. 1994) (finding that defendant credit card companies' reporting information to credit agencies failed to convert defendants into CRAs and that the information reported failed to qualify as a "consumer report.")

The plaintiff's characterizations of (1) IAEFCU as a CRA and (2) the information provided to Equifax by IAEFCU as a "consumer report" are both without merit in light of the statutory definitions. Thus, summary judgment should be granted dismissing the Amended Complaint and the plaintiff's cross motion should be denied.

---

eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."

10

**IV.**

Finally, the plaintiff in his response to the defendant's motion attempts to add three additional claims that were not raised in the Amended Complaint. The plaintiff alleges that, in addition to § 1681c(a)(4), the defendant allegedly violated: (1) 15 U.S.C. § 1681b; (2) 15 U.S.C. §§ 1681s-2(a)(1), (a)(2), and (b)(1); and (3) 15 U.S.C. § 1681i(a)(2). As the defendant argues in its reply to the plaintiff's response, these claims are not only without merit, but were not raised in the plaintiff's Amended Complaint and are not properly before the Court.

The plaintiff has had ample opportunity to assert all viable claims against the defendant, and indeed, has filed an Amended Complaint that focused on IAEFCU's alleged violation of § 1681c(a)(4). The plaintiff never sought to amend his complaint further to add these claims and, as such, they are not properly part of this lawsuit. Moreover, it is well established that a party cannot avoid summary judgment by raising new claims in response to a motion for summary judgment. See Hawana v. City of New York, 230 F. Supp. 2d 518, 534 (S.D.N.Y. 2002); Beckman v. U.S. Postal Service, 79 F. Supp. 2d. 394, 407-08 (S.D.N.Y. 2000) (noting that the plaintiff's attempt to raise new claims in his opposition papers was designed "simply to avoid defendants'

11

meritorious summary judgment motions"); McAllister v. New York City Police Dept., 49 F. Supp. 2d 688, 691, 698 (S.D.N.Y. 1999).

To the extent that the plaintiff seeks leave to amend his complaint by adding new claims in response to the motion for summary judgment, the motion is denied as untimely and dilatory. See Beckman, 79 F. Supp. 2d at 408 ("[l]eave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion ... for summary judgment, particularly when the new claim could have been raised earlier.") (internal citation omitted).

Moreover, the plaintiff's new claims are without merit. First, the plaintiff does not specify under which section of 15 U.S.C. § 1681b he seeks relief. In any case, that section of the FCRA plainly applies only to CRAs, not furnishers of credit information, such as the defendant. See generally 15 U.S.C. § 1681b. The plaintiff's claim under § 1681i(2) is similarly without merit because that section only applies to CRAs. See 15 U.S.C. § 1681i(2)(A) and (B) (stating that "(A) ... Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification .... (B) ... The consumer reporting agency shall promptly provide to the person who provided

the information in dispute all relevant information ....")
(emphasis added).

The plaintiff's claims under 15 U.S.C. § 1681s-2 are without merit. While § 1681s-2 imposes obligations on "furnishers" of information, that section has its own limitations. Section 1681s-2(a) imposes a duty on furnishers of information to provide accurate information, but the plaintiff has no claim under that section because there is no private right of action under that section. See, e.g., Burns v. Bank of America, No. 03 Civ. 1685, 2003 WL 22990065 (S.D.N.Y. Dec. 18, 2003), vacated on other grounds, 115 Fed. Appx. 105 (2d Cir. 2004); Redhead v. Winston & Winston, P.C., No. 01 Civ. 11475, 2002 WL 31106934 (S.D.N.Y. Sept. 20, 2002) (collecting cases).

Section 1681s-2(b) imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a CRA pursuant to 15 U.S.C. § 1681i(a)(2). A majority of courts have found that consumers may pursue claims for willful or negligent noncompliance with § 1681s-2(b). Redhead, 2002 WL 31106934 at *5. In this case, it is unclear whether the notice that IAEFCU received from Equifax contained all the information required under § 1681i(a)(2), and what investigation IAEFCU conducted. IAEFCU maintains that the actual information it

13

provided in response to the request for information - the amount of the last payment and the outstanding balance - was in fact accurate. In any event, it is untimely to raise this new claim for the first time in response to the motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is **granted**. The plaintiff's cross motion for summary judgment is **denied**. To the extent that the plaintiff seeks leave to amend the complaint, the motion is **denied**. The clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:** New York, New York
May 19, 2006

_____
John G. Koeltl
United States District Judge